■ BINGHAMTON GHS EMPLOYEES FEDERAL CREDIT UNION et al., Petitioners, v STATE DIVISION OF HUMAN RIGHTS et al., Respondents.—Determination annulled on the law without costs and petition granted. Memorandum: In October of 1982, Theresa Yadlosky applied for an automobile loan from the Binghamton GHS Employees Federal Credit Union. The credit loan application contained a provision whereby the debtor could elect, at his or her option, to purchase credit health and disability insurance which would pay the installment loan payment if the debtor became disabled and was unable to pay the installment. Yadlosky took out the loan and opted to purchase the credit health and disability insurance for which she was charged a one-time premium of $388.44, amortized over the period of the loan and included in the installment payments. Yadlosky understood at the time that she chose to purchase the credit insurance that it was optional and not a prerequisite to securing credit.

In January 1984 and again in March 1985, Yadlosky filed a claim for coverage under the policy due to a disability related to normal pregnancy. She was denied coverage on each occasion pursuant to a provision of the insurance policy which provided: "Normal pregnancy. We will not pay a disability benefit if the debtor becomes disabled due to a normal pregnancy". Yadlosky filed complaints with the State Division of Human Rights alleging that the denial of coverage amounted to unlawful discrimination in the terms, conditions and privileges of credit by virtue of her sex, in violation of the Human Rights Law (see, Executive Law § 296-a [1] [b]). The Commissioner's final order, made after a public hearing, concluded that the insurance policy was so "inextricably intertwined with the auto car loan" that it constituted a "term and condition" of credit and violated the Human Rights Law (see, Executive Law § 296-a [1] [b]).

We observe at the threshold that, in deciding an appeal from a determination of the Commissioner of Human Rights after a public hearing, our review is limited to deciding whether the Commissioner's decision is supported by substantial evidence or is arbitrary and capricious (Executive Law § 298; *Matter of CUNY-Hostos Community Coll. v State Human Rights Appeal Bd.*, 59 NY2d 69; *Matter of Pell v Board of Educ.*, 34 NY2d 222, 231; *State Div. of Human Rights v Xerox Corp.*, 102 AD2d 543, 547, *affd* 65 NY2d 213). Here, however,

the determination of the Commissioner did not involve factual evaluations in the area of the agency's expertise *(see, Matter of Metropolitan Life Ins. Co. v State Tax Commn.,* 55 NY2d 758; *cf., Flacke v Onondaga Landfill Sys.,* 69 NY2d 355, 362; *Matter of Palmer v New York State Dept. of Envtl. Conservation,* 132 AD2d 996). The narrow issue to be resolved in this case was presented upon a stipulated statement of facts made at the commencement of the public hearing.

In our view, the State Division of Human Rights lacked subject matter jurisdiction to adjudicate the complaint herein. Yadlosky applied for and received an automobile loan from the Binghamton GHS Employees Federal Credit Union. She was offered credit health and disability insurance; the purchase of this insurance was not required as a condition to obtaining the loan. We conclude, therefore, that this insurance transaction did not implicate a "term or condition" of credit within the meaning of the Human Rights Law; thus, the Commissioner's determination, on this record, was arbitrary and capricious and lacked a rational basis *(see,* Executive Law § 292 [20], [22]; § 296-a [1] [b]; *see, Matter of Pell v Board of Educ., supra,* at 231). The proscription of section 296-a of the Executive Law relates to gender-based discrimination in granting or extending credit. Here, Yadlosky was offered credit without any unlawful preconditions that affected her ability to obtain the loan. Moreover, we note that the credit health and disability policy issued to Yadlosky was in compliance with the regulations promulgated by the Superintendent of Insurance. Those regulations permit a policy of credit health and disability insurance to exclude from coverage a claim for disability due to a normal pregnancy *(see,* 11 NYCRR 185.5 [f] [2] [i]; *see also, National Org. for Women v Metropolitan Life Ins. Co.,* 131 AD2d 356, 358).

All concur, except Lawton, J., who dissents and votes to confirm the determination, in the following memorandum.

Lawton, J. (dissenting). I dissent. The Commissioner's finding of jurisdiction in unlawful discrimination cases is entitled to great weight and should be annulled only in the clearest of cases *(see, Matter of Board of Educ. v New York State Div. of Human Rights,* 56 NY2d 257, 261; *Matter of Imperial Diner v State Human Rights Appeal Bd.,* 52 NY2d 72, 77). This is not such a case in that there are ample facts to support the Commissioner's determination that the credit disability policy was "inextricably intertwined" with the car loan to constitute "a term and condition of credit". The disability insurance policy was offered as part of every installment loan and was

not offered separately. The amount of benefits and the duration of the policy were determined by the amount and duration of the loan. The policy benefited both the borrower and lender. The borrower is protected against a default during periods of disability, while the lender makes a profit on the issuance of the policy and is afforded protection against a default.

The majority's determination that the Commissioner is without jurisdiction to act in this instance is founded solely on the fact that the disability insurance coverage was optional and therefore cannot be considered as a term or condition of credit. I do not believe that fact to be controlling.

While these optional policies may not be said to be a condition to the granting of credit, it certainly becomes a term or part of the loan transaction once the loan is made and the policy issued. There no longer is any question that the denial of disability benefits incurred during normal pregnancies in a protected activity is discriminatory *(Brooklyn Union Gas Co. v New York State Human Rights Appeal Bd.,* 41 NY2d 84). The proper question to be asked therefore is whether a lender, as part of its regular loan procedures, can offer a disability benefits policy, whether optional or not, that discriminates against women? I believe not. The end result in this case is that a woman, unlike a man, is denied the opportunity to obtain full disability protection. Thus, when a woman obtains insurance coverage as part of the loan transaction, she is being deprived of full disability benefits by reason of her sex in violation of the Human Rights Law. The fact that the policy in question is approved by the Superintendent of Insurance is immaterial. In this protected area the Superintendent's regulations must be read as setting forth a concurrent standard which does not abrogate the independent standard and expressed commands of the Human Rights Law *(see, Brooklyn Union Gas Co. v New York State Human Rights Appeal Bd., supra,* at 87-88). (Article 78 proceeding transferred by order of Supreme Court, Monroe County, Patlow, J.) Present—Dillon, P. J., Callahan, Boomer, Lawton and Davis, JJ.