In the Matter of KEITH L. VANBUSKIRK, Appellant, v ADIRON-
DACK PARK AGENCY, Respondent.

Third Department, December 13, 1990

APPEARANCES OF COUNSEL

*Asadourian & Johnston, P. C. (Ara Asadourian* of counsel), for appellant.

*Robert Abrams, Attorney-General (Lawrence A. Rappoport* of counsel), for respondent.

### OPINION OF THE COURT

KANE, J. P.

The genesis of this litigation lies in the 1976 issuance of permit No. P76-210 by respondent upon its approval of a class A regional project for the subdivision of approximately 70 acres of land situated in the Town of Bolton, Warren County, known as "Trout Lake Shores". The order granting the permit, duly recorded in the County Clerk's office on September 8, 1986, authorized a 16-lot subdivision in accordance with plans submitted, but specifically withheld approval of any development on or subdivision of an approximate 24-acre contiguous parcel without a separate permit from respondent. It is the proposed development of that 24-acre parcel which has precipitated this litigation.

On April 18, 1980, respondent approved a zoning ordinance

and land use program for the town, which transferred to the town review jurisdiction over class B regional projects *(see,* Executive Law § 807; 9 NYCRR 582.1 [a]). On May 15, 1985, petitioner entered into a contract to acquire the 24-acre parcel. His contract vendors had acquired this parcel on July 15, 1982 when they purchased all but three of the lots included in "Trout Lake Shores", which, pursuant to approval by the town, they had resubdivided into three separate lots. An application for review and approval of a subdivision known as "Trout Lake Shores II", a class B project *(see,* Executive Law § 810 [2]; 9 NYCRR 573.3), was filed on behalf of petitioner with the Town Planning Board on July 13, 1985 and, according to an affidavit of service by the Town Zoning Administrator, copies of the application for the subdivision and all related materials were forwarded to respondent on July 17, 1985 *(see,* Executive Law § 808). However, respondent asserts that it has no record of such notice from the Town Planning Board.

Petitioner's class B subdivision of the retained parcel was approved by the town in October 1985 after a public hearing, and the Department of Health approved the water and sewer plan for the subdivision in December 1985. Petitioner acquired title to this parcel on December 12, 1985, subdivided it and sold two of the lots. Thereafter, and by letter dated February 7, 1986, petitioner received from respondent a "notice of apparent violation" for undertaking a subdivision of a class B regional project without respondent's approval as required by permit No. P76-210, and invited petitioner to meet with respondent to discuss the alleged violation. Petitioner accepted the invitation and appeared before respondent's Enforcement Committee, where he challenged respondent's jurisdiction over his proposed subdivision by arguing that such jurisdiction had been transferred to the town when the local land use program was approved. After rejection of this argument by respondent, petitioner received an "offer to resolve violation" dated February 28, 1986, advising him that the matter could be resolved without referral to the Attorney-General provided he agreed to the following:

"1. submit [within 30 days] an application seeking approval [after-the-fact] for the subdivision in accordance with the requirements of * * * Permit No. 76-210;

"2. comply with the procedure and ultimate determination of [respondent's] project review process (reserving to you all rights of administrative appeal and judicial review)."

Petitioner agreed to the terms of the offer in a written instrument dated March 7, 1986, filed his application and complied with respondent's request for, *inter alia,* modification of his plans for the subdivision. Nevertheless, and after considerable delay, respondent disapproved petitioner's application by order dated October 7, 1988. This CPLR article 78 proceeding in the nature of prohibition was commenced on November 30, 1988. The petition, claiming that respondent did not have class B review jurisdiction over petitioner's proposed subdivision, was dismissed by Supreme Court on the grounds of laches, and this appeal ensued.

■ We agree with Supreme Court that the issue of respondent's jurisdiction was raised on behalf of petitioner when he appeared before the Enforcement Committee and that the "offer to resolve violation" of February 28, 1986 informed petitioner of respondent's legal determination that it retained review jurisdiction over his proposed subdivision. That determination also advised petitioner of his right to appeal to respondent by March 10, 1986 and informed him of the procedure to perfect the appeal. Accordingly, in view of our prior holding that "[t]he true accrual point of [a] petitioner['s] cause of action is determined by ascertaining the 'focus' of [his] legal challenge" *(Matter of Westage Dev. Group v White,* 149 AD2d 790, 791, *lv denied* 74 NY2d 609), and petitioner's claim that the "central issue" of this proceeding is whether respondent exceeded its jurisdiction, we are compelled to conclude that the jurisdictional determination of February 28, 1986, rather than the permit order of October 7, 1988, measures the time within which the proceeding must be commenced *(see,* CPLR 217).

■ Even if we accept petitioner's argument that the commencement of a CPLR article 78 proceeding following respondent's jurisdictional determination would have been dismissed as premature *(see, Watergate II Apts. v Buffalo Sewer Auth.,* 46 NY2d 52, 57), his failure to accept the invitation to appeal for review before respondent and await a period of two years to contest the determination constitutes laches *(see, Matter of Town of Fenton v New York State Dept. of Envtl. Conservation,* 117 AD2d 920, 922). Moreover, although petitioner has commenced this proceeding in the nature of prohibition, he is actually challenging respondent's analysis of facts and laws in its determination of jurisdiction. Such a proceeding is in the nature of certiorari, and is subject to a 60-day Statute of Limitations *(see,* Executive Law § 818 [1]). Having failed to

appeal to respondent when invited, petitioner should not " 'be allowed to resort to such an extraordinary remedy to excuse noncompliance with a statutorily defined time limitation' " *(Matter of Westage Dev. Group v White, supra,* at 792, quoting *Matter of City of New York v New York State Dept. of Envtl. Conservation,* 89 AD2d 274, 277).

We must also reject petitioner's argument that the reservation of the right to administrative appeal and judicial review granted in the communication of February 28, 1986 separated the jurisdictional determination from the "ultimate determination" and that it is "manifestly unfair" for respondent to claim the proceeding is untimely or barred by laches. Petitioner's interpretation of and good-faith reliance upon the provision is misplaced, for a reading of the complete offer supports respondent's contention that the reservation of rights provision was intended to apply prospectively only, and to the review of respondent's ultimate determination on the permit application and not to the initial jurisdictional determination.

■ With regard to respondent's determination of the jurisdictional issue as one of first impression, we agree that, since petitioner's parcel of land had been previously reviewed by respondent and was subject to permit No. P76-210 conditioning further approval by respondent prior to any additional subdivision, its jurisdiction over petitioner as a "subsequent grantee * * * of the land area subject to the permit" was retained (Executive Law § 809 [7] [b]). Accordingly, we need not reach the other issues raised by petitioner on this appeal.

· WEISS, MIKOLL, YESAWICH, JR., and MERCURE, JJ., concur.

Judgment affirmed, without costs.